**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

JOHN LEWIS MAYNARD,

      Petitioner,

v.                                                                      Case No. 8:13-cv-1428-T-36EAJ

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.[1]

_____/

## ORDER

      Petitioner John Lewis Maynard, an inmate in the Florida Department of Corrections

proceeding *pro se*, initiated this action by filing a petition for writ of habeas corpus under

28 U.S.C. § 2254 (Dkt. 1).  Maynard challenges his convictions entered by the Circuit Court

for the Twelfth Judicial Circuit, Manatee County, in 2004.  Respondent filed a response

(Dkt. 20), which does not contest the timeliness of Maynard's petition.  Maynard filed a

reply (Dkt. 27) and a supplement to the reply (Dkt. 30).  Upon review, the petition must be

denied.

### PROCEDURAL HISTORY

      Maynard was charged with four counts of sexual battery by a person over 18 years

of age upon a child less than 12 years of age (counts one through four), and two counts of

---

[1] When Maynard filed his petition, he named as Respondent the warden of the facility at which he was
then incarcerated.  Under Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District
Courts, the respondent is "the state officer who has custody" of the petitioner. Accordingly, the proper
respondent is the Secretary, Department of Corrections. The Court notes that the response (Dkt. 20) also
identifies Respondent as the Secretary, Department of Corrections.  This Order directs the Clerk to amend
the docket to reflect that the Respondent is the Secretary, Department of Corrections.

lewd or lascivious molestation by a person over 18 years of age upon a child less than 12 years of age (counts five and six).  (Dkt. 24, Ex. 1, pp. 26-29.)  A jury found Maynard not guilty of counts one, two, five, and six.  (*Id.*, pp. 82-85.)  On counts three and four, the jury convicted him of the lesser-included offense of attempt to commit sexual battery by a person over 18 years of age upon a child less than 12 years of age.  (*Id.*, pp. 83-84.)  Maynard was sentenced to consecutive terms of twenty years in prison.  (*Id.*, pp. 95-102.)  The state appellate court *per curiam* affirmed the judgments and sentences.  (Dkt. 24, Ex. 4.)

Maynard filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850, as well as numerous supplements to the motion.  (Dkt. 24, Ex. 6, pp. 52-160, 162-203; Ex. 6A, pp. 204-224.)  After Maynard amended one of his claims, the state court entered an order denying the motion in part and granting an evidentiary hearing on a number of grounds.  (Dkt. 24, Ex. 6A, pp. 230-46, 332-88; Exs. 6B, 6C.)  The state court denied the motion following the evidentiary hearing.  (Dkt. 24, Ex. 6D, pp. 739-873.)  The state appellate court *per curiam* affirmed the rejection of Maynard's postconviction motion.  (Dkt. 24, Ex. 10.)

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.,* 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied,* 531 U.S. 840 (2000).  Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Section 2254(d), which sets forth a highly deferential standard for federal court review of a state court adjudication, states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied–the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded

disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that [the federal court is] to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

The purpose of federal review is not to re-try the case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Cone*, 535 U.S. at 693. In other words, "AEDPA prevents defendants–and federal courts–from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster*, 563 U.S. 170, 131 S. Ct. 1388, 1398 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . ") (citations omitted).

In a *per curiam* decision without a written opinion, the state appellate court affirmed the rejection of Maynard's postconviction motion. This decision warrants deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied,* 278 F.3d 1245 (2002), *cert. denied sub nom. Wright v. Crosby,* 538 U.S. 906 (2003). *See also Richter,* 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state

court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."). Review of the state court decision is limited to the record that was before the state court. *Pinholster,* 131 S. Ct. at 1398.

Maynard bears the burden of overcoming by clear and convincing evidence a state court factual determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## EXHAUSTION OF STATE REMEDIES; PROCEDURAL DEFAULT

Before a district court can grant habeas relief to a state prisoner under § 2254, the petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state postconviction motion. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckei*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). *See also Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted). A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary." *Fruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845).

To exhaust a claim, a petitioner must make the state court aware of both the legal and factual bases for his claim. *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir.

1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).   A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented."   *Fruitt*, 348 F.3d at 1358.  The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief. *Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).

The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim.   28 U.S.C. § 2254(b)(1); *Picara v. Connor*, 404 U.S. 270, 275-76 (1971).   A petitioner may raise a federal claim in state court "by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or simply by labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established."   *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).   To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court."   *Wright v. Hopper*, 169 F. 3d 695, 703 (11th Cir. 1999).

*See also Murray v. Carrier*, 477 U.S. 478 (1986).  To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions.  *United States v. Frady*, 456 U.S. 152, 167-70 (1982).  The petitioner must show at least a reasonable probability of a different outcome.  *Henderson*, 353 F.3d at 892; *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

Alternatively, a petitioner may obtain federal habeas review of a procedurally defaulted claim if review is necessary to correct a fundamental miscarriage of justice.  *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Carrier*, 477 U.S. at 495-96.  A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent.  *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson*, 353 F.3d at 892.  This exception requires a petitioner's "actual" innocence.  *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001).  To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error.  *Schlup*, 513 U.S. at 327.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Claims of ineffective assistance of counsel are analyzed under the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a petitioner to demonstrate both deficient performance by counsel and resulting prejudice.  Demonstrating deficient performance "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.* at 687.  Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent

assistance." *Id.* at 690.   However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*  Additionally, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.*

Maynard must demonstrate that counsel's alleged errors prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."  *Id.* at 691-92.   To show prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.

A petitioner cannot meet his burden merely by showing that counsel's choices were unsuccessful:

> The test has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992).  *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable. But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776, 794

(1987)).

Sustaining a claim of ineffective assistance of counsel on federal habeas review is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105 (citations omitted). *See also Pinholster*, 131 S. Ct. at 1410 (a petitioner must overcome the "'doubly deferential' standard of *Strickland* and AEDPA.").

If a claim of ineffective assistance of counsel can be resolved through one of the *Strickland* test's two prongs, the other prong need not be considered. 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998) ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds.").

## DISCUSSION

**Grounds Two and Three**

On counts three and four, the State alleged that Maynard committed sexual battery by using his finger(s) to penetrate the victim, his daughter. (Dkt. 24, Ex. 1, pp. 27-28.) The jury convicted Maynard of attempt to commit sexual battery on these counts. In Ground Two, Maynard argues that counsel was ineffective for not moving for a post-verdict judgment of acquittal on the basis that the State's evidence was insufficient to establish attempt to commit sexual battery. He claims that the evidence did not show that he had intent, committed an act toward the charged offense, or failed or was intercepted or

prevented from completing the charged act.[2]   In Ground Three, Maynard asserts that counsel was ineffective for failing to move for a new trial on the basis that the finding of attempt to commit sexual battery was contrary to the weight of the evidence.[3]

The state court granted an evidentiary hearing on both of these ineffective assistance of counsel claims.   At the hearing, counsel testified that, "looking back in hindsight now," he wished that he had filed a motion for judgment of acquittal. (Dkt. 24, Ex. 6D, pp. 773-74.)  Similarly, counsel testified that, "in hindsight," he wished that he had filed a motion for new trial because the crime proven at trial was "L & L."  (*Id.*, p. 775.)[4]  On the other hand, counsel testified, there was an argument to be made that the evidence showed attempt to commit sexual battery because of testimony of "some form of penetration of something."  (*Id.*, p. 778.)

The state court treated these claims of ineffective assistance of counsel together and denied them:

> As to Defendant's claims that trial counsel was ineffective for failing to move for a post-verdict judgment of acquittal and a new trial based on insufficient evidence or the lack of evidentiary weight to sustain his convictions, this Court finds that they are meritless.  It is axiomatic "that the credibility of the witnesses and the weight of the evidence [are] within the sole province of the jury, and that the court should not substitute its judgment

---

[2] Section 777.04(1), Fla. Stat., provides:

A person who attempts to commit an offense prohibited by law and in such attempt does any act toward the commission of such offense, but fails in the perpetration or is intercepted or prevented in the execution thereof, commits the offense of criminal attempt . . .

[3] In amended ground eight of his postconviction motion, Maynard argued that the evidence established only a completed act, and that counsel therefore should have filed a motion for new trial.  (Dkt. 24, Ex. 6A, p. 236-38.)  Upon noting that a claim concerning sufficiency of the evidence is proper in a motion for judgment of acquittal, the state court interpreted Maynard's claim as raising two distinct arguments regarding a motion for judgment of acquittal and a motion for new trial.  (*Id.*, pp. 368-67.)

[4] This appears to be a reference to lewd or lascivious molestation.

for that of the jury; but the [s]ufficiency of the evidence to support a verdict is within the court's determination." Chaffin v. State, 204 So. 2d 22, 24 (Fla. 1st DCA 1967) (citing Bailey v. State, 79 So. 730, 730 (Fla. 1918)).

Defendant was found guilty, following a jury trial, of two counts of attempted sexual battery for attempting to digitally penetrate his then eleven year old daughter's vagina. Sexual battery is defined in pertinent part as the "vaginal penetration of another by any other object." § 794.011(1)(h), Fla. Stat. (2003). Digital penetration of the vagina constitutes sexual battery. See Firkey v. State, 557 So. 2d 582, 583-86 (Fla. 4th DCA 1989), disapproved on other grounds, Wilson v. State, 635 So. 2d 16, 17 (Fla. 1994); Furlow v. State, 529 So. 2d 804, 805 (Fla. 1st DCA 1988); State v. Pate, 656 So. 2d 1323, 1326 (Fla. 5th DCA 1995). Actual penetration of the vagina must occur in order to sustain a sexual battery conviction grounded in an allegation of digital penetration. See Firkey, 557 So.2d at 586 (finding "[p]enetration of the *vagina* is an essential element of the crime of sexual battery with an object other than a sexual organ.") (emphasis not added). The Firkey court explained that "[n]either the labia majora nor the labia minora are part of the vagina. A sexual battery by an object other than a sexual organ occurs only if the victim's *vagina* is penetrated." Id. at 584-85 (emphasis not added).

However, if the evidence at trial supports both a completed and an attempted crime, and attempt is a lesser included offense of that which is charged, then a jury instruction on attempt is proper. See F.N. v. State, 745 So. 2d 1149, 1150 (Fla. 4th DCA 1999); Fla. R. Crim. P. 3.510(a). The Florida Supreme Court classified attempted sexual battery as a category 2 permissively lesser included offense. See Wilson v. State, 622 So. 2d 31, 33 (Fla. 1st DCA 1993) (citing In re Standard Jury Instructions in Criminal Cases, 543 So. 2d 1205, 1236 (Fla. 1989). As such, a jury instruction on attempted sexual battery may be provided "unless the evidence [only] conclusively shows that the charged crime was completed." Id. In Barnhart v. State, 670 So. 2d 1082, 1082-83 (Fla. 2d DCA 1996), the court held that it was "reversible error in failing to give an instruction on attempted capital sexual battery" when the victim's testimony was equivocal regarding whether the defendant penetrated her vagina. The court found that "[s]ince the evidence would support both instructions, and since attempted capital sexual battery is a category two, lesser included offense of capital sexual battery, the attempt instruction should have been given." Id. at 1083. In addition, "[t]he ability to find a defendant guilty of an attempt permits a factfinder to exercise its pardon power where there is evidence to support the attempt and the evidence does not prove only a completed offense." F.N., 745 So. 2d at 1150 (citing Henry v. State, 445 So. 2d 707, 708 (Fla. 4th DCA 1984)); accord Wilson, 622 So. 2d at 37.

In the case sub judice, the evidence at trial was sufficient for the jury to find that the victim's vagina was penetrated or that Defendant attempted to penetrate it. The victim testified as follows on direct examination:

STATE:      Tell me what your dad did.
VICTIM:     He made me get out of my pants.
STATE:      What kind of pants did you have on?
VICTIM:     Boxer shorts.
STATE:      What did he do?
VICTIM:     He would play with my private parts and make
            me play with his.
STATE:      When you said, "play with your private parts," are
            you talking about your vagina?
VICTIM:     Yes.
DEFENSE:    Judge, I'm going to object.  Leading.
COURT:      Okay, I'll sustain the objection on that question.
STATE:      What private part are you talking about?
VICTIM:     My vagina.
STATE:      Okay.  When you said he played with it, what did
            he do to you?
VICTIM:     He stuck his finger in.
STATE:      Did it go inside?
VICTIM:     Yes.

On cross-examination, Defendant's trial counsel elicited the
following:

DEFENSE:    *** You have never had a course in biology; is
            that correct?
VICTIM:     Yes.
DEFENSE:    Have you ever discussed with your mother the
            names of your private areas?
VICTIM:     No.
DEFENSE:    Have you ever discussed with a doctor the
            names of your private areas?
VICTIM:     No.
DEFENSE:    But you are familiar with your private area?
VICTIM:     Yes.
DEFENSE:    You know it's there.
VICTIM:     Yes.
DEFENSE:    Okay.  Now, you have been using the term
            "vagina."  And the reason I need to talk about
            this, and I know it's a little embarrassing,
            because a lot of young girls and even young
            women, and especially men, they use the term
            "vagina" to mean everything.  Because did you
            know that you have more than one, more than
            one private thing down there?

VICTIM:      No.

DEFENSE:     You think it's just one, is that correct?

VICTIM:      Yeah.

DEFENSE:     And you think the name of it is a vagina?

VICTIM:      Yes.

DEFENSE:     Okay.  But there's actually a lot more than one thing.  When you go to the bathroom, do you think that's part of the vagina?

VICTIM:      Yes.

DEFENSE:     Okay.  Well, would you believe it if I told you that's actually something separate?  It's called a urethra and it's not part of the vagina.

VICTIM:      (Witness shakes head.)

DEFENSE:     Okay.  And there's a term called vulva.  Have you ever heard of that?

VICTIM:      No.

DEFENSE:     Okay.  Vulva is a collective term that basically describes some of the organs that you have down there.  There's one called labial majora. That's down in your private area.


STATE:       Objection, he is not asking questions, he is lecturing about biology.

COURT:       Well, you have to ask her if she knows what it is before you inquire.


DEFENSE:     Do you know what the laboria [sic] majora is?

VICTIM:      No.

DEFENSE:     Do you know what the laboria [sic] minor is?

VICTIM:      No.

DEFENSE:     Do you know what the clitoris is?

VICTIM:      No.

DEFENSE:     Is it possible that your dad touched one of those things other than what - -


STATE:       Judge, objection.  She already answered she doesn't know what those things are.

COURT:       Rephrase your question or ask a different question.


DEFENSE:     You have testified that your father touched the vagina.  Okay.  Do you know what the vagina is?

VICTIM:      Yes.

DEFENSE:     Can you tell me what it is?

VICTIM:      It's what a woman has.

DEFENSE:    Okay, but a woman has a lot of things down there. The vagina is one of them. Do you know which one the vagina is?

VICTIM:    Yes.

DEFENSE:    Assuming there are different things down there, [ ], is it possible that your father touched one of these other sexual organs rather than the vagina?

VICTIM:    No.

DEFENSE:    How do you know he touched your vagina?

VICTIM:    Because that's what it is.

DEFENSE:    Excuse me?

VICTIM:    Because that's what it is.

DEFENSE:    Okay. But if you don't know what it is, and you don't know where these other things are, how do you know it's the vagina?

VICTIM:    Because that's what - - I don't know. That's just what he touched.

DEFENSE:    And this is kind of touchy, okay, but I have to ask it, and I'm sorry, [ ]. But in your private area, the very outside part, there's something that comes apart, doesn't it?

VICTIM:    Yes.

DEFENSE:    Okay. Is that what he touched, where it comes apart?

VICTIM:    Yes.

DEFENSE:    Okay. And you're sure that's where he touched you, where it comes apart?

VICTIM:    Uh-huh.

DEFENSE:    Okay. Do you know what a hymen is?

VICTIM:    No.

DEFENSE:    Do you know whether or not he touched the hymen?

VICTIM:    I don't know what it is.

DEFENSE:    Okay. But to the best of your recollection, what he touched was that part of your female organ that comes apart?

VICTIM:    Yes.

DEFENSE:    If the name of that is labia majora - -

STATE:    Objection, Judge, she has said she doesn't know what the term means. The question is misleading.

COURT:    Go ahead and finish the question.

DEFENSE:    If that happens to be the name of that organ, would that be what he touched?
VICTIM:     No.
DEFENSE:    Okay.
VICTIM:     He touched - -
DEFENSE:    Who told you the name "vagina"?
VICTIM:     It's in the book.
DEFENSE:    Okay.  And where is the vagina located?
VICTIM:     Below the belly button.
DEFENSE:    Okay.  But you have testified that you don't know the names of the other organs that are down there?
VICTIM:     No.
DEFENSE:    So how do you know that he touched the vagina?
VICTIM:     Because, I don't know, that's what it's called.

                              ***

DEFENSE:    When you used the term "vagina," and I'm not picking on you, [ ], because a lot of young women, even a lot of older women and most men do the same thing, do you use the term "vagina" to mean all of your private area?
VICTIM:     Yes.
DEFENSE:    Okay.  Isn't it true that you are not really able to tell us, other than saying the vagina is in your private area, where it is; is that true?
VICTIM:     Uh-huh.

The foregoing testimony illustrates that the victim believed that Defendant penetrated her vagina, but she was unable to distinguish the vagina from other parts of the sex organ, instead she used the term 'vagina' to describe the entire organ.  This left the jury with the question of whether Defendant actually penetrated the victim's vagina or whether he attempted to no avail.  Consequently, this testimony was sufficient to support both a finding of sexual battery and attempted sexual battery.  See Walker v. State, 622 So. 2d 630, 631 (Fla. 3d DCA 1993); State v. Stone, 677 So. 2d 982, 983-84 (Fla. 5th DCA 1996).  A jury instruction on attempt was thus proper and the jury's findings are therefore sound, which precludes Defendant from successfully challenging trial counsel's failure to move for a post-verdict judgment of acquittal and a new trial based on insufficient evidence to sustain his convictions as neither motion would have been granted.

(Dkt. 24, Ex. 6D, pp. 809-14) (court's record citations and footnote omitted).

"The purpose of a motion for judgment of acquittal is to test the legal sufficiency of

the evidence presented by the state." *Harris v. State*, 954 So.2d 1260, 1261 (Fla. 5th DCA 2007).[5]  With respect to a motion for judgment of acquittal, there is sufficient evidence to sustain a conviction if, "after viewing the evidence in a light most favorable to the State, a rational trier of fact could find the existence of the elements of the crime beyond a reasonable doubt." *Reynolds v. State*, 934 So.2d 1128, 1145 (Fla. 2006).

The state court thoroughly addressed relevant state law and applied it to the evidence adduced at trial. Based on the victim's testimony, the state court found sufficient evidence of attempt to commit sexual battery had been presented to defeat any post-verdict motion for judgment of acquittal.  As the court explained, the victim's testimony supported a finding of attempt to commit sexual battery because it reflected uncertainty as to whether vaginal penetration actually occurred.  Thus, the state court determined that, had counsel filed the motion, it would have been rejected under the standard applicable in state court.  "[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).  *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005) ("The Florida Supreme Court already has told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done. . . . It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'") (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)).

Although counsel testified at the evidentiary hearing that, "in hindsight," he wished

---

[5] A motion for judgment of acquittal may be made after the verdict, in accordance with Fla. R. Crim. P. 3.380(c).  *State v. Stevens*, 694 So. 2d 731, 733 (Fla. 1997).

he had moved for a judgment of acquittal, this testimony is insufficient to show ineffective assistance. *Strickland* cautions that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight . . ."  466 U.S. at 689.  And even if counsel had filed the motion, if would have been unsuccessful.  Thus, Maynard does not show entitlement to relief, as counsel cannot be deemed ineffective for failing to file a meritless motion.  *See Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (finding that counsel was not ineffective for failing to raise issues that clearly lack merit).  *See also Will v. Sec'y, Dep't of Corr.*, 278 Fed. App'x 902, 908 (11th Cir. 2008) ("Although an ineffective-assistance-of-counsel claim is a *federal* constitutional claim, which we consider in light of the clearly established rules of *Strickland*, when 'the validity of the claim that [counsel] failed to assert is clearly a question of *state* law, . . . we must defer to the state's construction of its own law.'") (citing *Alvora v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984)).

A claim that the verdict is contrary to the weight of the evidence may be raised in a motion for new trial. Fla. R. Crim. P. 3.600(a)(2). In reviewing a motion for new trial brought on this basis, "the trial court must exercise its discretion to determine 'whether a greater amount of credible evidence supports' an acquittal." *Ferebee v. State*, 967 So.2d 1071, 1073 (Fla. 2d DCA 2007) (quoting *Geibel v. State*, 817 So.2d 1042, 1044 (Fla. 2d DCA 2002)).  Under Rule 3.600(a)(2), the trial judge may "weigh the evidence and determine the credibility of witnesses. . ." *Id.* (quoting *Tibbs v. State*, 397 So.2d 1120, 1123 n. 9 (Fla. 1981)).  The trial court has broad discretion in its review. *Moore v. State*, 800 So.2d 747, 748 (Fla. 5th DCA 2001).

The state court determined, upon reviewing the evidence presented at Maynard's

trial, that a motion for new trial asserting the verdict was contrary to the weight of the evidence would have failed under applicable Florida law.  This decision must be given deference.  *See Herring*, 397 F.3d at 1354-55.   As discussed, counsel's evidentiary testimony that in hindsight he wished he had filed a motion for new trial is insufficient to demonstrate ineffective assistance of counsel.[6]   *See Strickland*, 466 U.S. at 689. Moreover, Maynard fails to demonstrate prejudice, given the state court's conclusion that even if the motion was made, it would have been rejected.  *See Will*, 278 Fed. App'x at 908.  Counsel cannot be deemed ineffective for failing to file a meritless motion. *Brownlee*, 306 F.3d at 1066.

The state court has made clear that neither motion proposed by Maynard would have succeeded under applicable state law.  Maynard does not show that the state court's rejection of his ineffective assistance of counsel claims was an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts.  Accordingly, Maynard does not show entitlement to relief on either Ground Two or Ground Three.

**Ground One**

Maynard asserts that counsel was ineffective for failing to object to the giving of an instruction on attempt to commit sexual battery when the evidence did not support attempt.

---

[6] Maynard claims that counsel's failure to timely file a motion for new trial deprived him of the ability for judicial review of the weight of the evidence.  Maynard's claim appears to involve review at the trial court level.  To the extent his argument is very liberally construed as a claim of ineffective assistance for failure to preserve for appellate review the argument that the verdict was contrary to the weight of the evidence, it is unexhausted due to Maynard's failure to expressly raise this claim in state court.  (Dkt. 24, Ex. 6A, pp. 236-38.)  Maynard cannot return to state court to file an untimely, successive postconviction motion.  *See* Fla. R. Crim. P. 3.850(b), (h).  The claim is therefore procedurally defaulted.  *See Smith*, 256 F.3d at 1138.  Maynard does not establish the applicability of an exception to overcome the default.  *See id.*  Notwithstanding the default, Maynard does not show entitlement to relief. Given the state court's determination that a motion for new trial was without merit under state law, Maynard fails to meet either prong of *Strickland*.

He appears to argue that the attempt instruction was improper because there was no evidence of intent or an act committed toward the completion of the charged offense, or that he failed or was intercepted or prevented from committing the charged offense.

However, at the evidentiary hearing, Maynard recalled that counsel *did* make an objection to the attempt instruction but did not present argument as to why it should be omitted.  (Dkt. 24, Ex. 6D, pp. 762-63.)  Counsel testified that he did not want the attempt instruction to be given.  (*Id.*, p. 772.)  The state court rejected Maynard's claim.  Citing Maynard's evidentiary hearing testimony and the trial transcript, the state court found that counsel did object to the attempt instruction on the sexual battery charges.  (*Id.*, pp. 808-09.)

Relevant portions of the trial transcript show that the parties discussed whether an attempt instruction would be given with respect to the charges of sexual battery:

> THE COURT:           Any special jury instructions that you are going to be requesting?
>
> [STATE]:                Judge, in light of [counsel's] argument, I have no objection to the attempt on any charge.  Because if the jury could believe based on, what I image he is going to argue, that he wasn't successful in completing the attempt. I guess he could argue that.  So I would ask that we include attempts on at least those charges, and I guess probably in all of them.
>
> THE COURT:           Okay.
>
> [DEFENSE]:         Judge, I will probably not be requesting attempted sexual battery, and I'll discuss that with my client, but I doubt I will.

(Dkt. 24, Ex. 1D, p. 517.)

> THE COURT:           All right, when we go to the lesser included crimes or attempts.  And the lessers for sexual battery would be

|  | attempted sexual battery, which I think the State was requesting and battery. |
|---|---|
| [DEFENSE]: | And the State was opposing an objection to it. |
| THE COURT: | The defense was opposing and objecting to the attempted sexual battery.  All right.  Any other lessers the defense would be requesting? |

(*Id.*, pp. 591-92.)

|  |  |
|---|---|
| THE COURT: | Okay, so it will just be attempted sexual battery and misdemeanor battery as the lessers.  Now - - |
| . . . |  |
| THE COURT: | No, we are doing the lessers of capital - - not capital, sexual battery. |
| [DEFENSE]: | Right, he already requested attempt. |
| THE COURT: | Right.  So attempt is in.  And battery is in.  And you don't want lewd and lascivious? |
| [DEFENSE]: | Correct. |

(*Id.*, p. 593.)

The state court made a finding of fact that counsel objected to the instruction.  A finding of fact is presumed correct, and must be overcome by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).  Maynard has not made this showing.  Moreover, the trial transcript reflects that counsel did not request the instruction, and noted the State opposed his objection to the attempt instruction.   It is also clear that the trial court understood defense counsel to have made an objection to the attempt instruction.

Even assuming counsel had not objected and therefore performed deficiently, Maynard cannot show prejudice.  With respect to Maynard's other ineffective assistance allegations, the state court examined the testimony adduced at trial and applied Florida law

providing that an attempt instruction is proper unless the evidence conclusively shows only that a completed offense occurred.  As the state court addressed, the victim's testimony left a question of whether attempt or a completed act occurred.

Accordingly, the state court made a finding that the attempt instruction was properly given in Maynard's trial.  This determination of state law is entitled to deference.  *See Bradshaw*, 546 U.S. at 76*; Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991) ("[T]he fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief."). Furthermore, as the state court has found that the instruction was proper, Maynard cannot show a reasonable probability that the outcome would have been different had counsel objected to the instruction.   Therefore, he cannot show prejudice under *Strickland*. Accordingly, Maynard does not show that the state court's rejection of his claim was an unreasonable application of clearly established federal law or was based on an unreasonable determination of the facts.  Ground One warrants no relief.


**Ground Four**

In Ground Four, Maynard seeks relief based on the cumulative effect of counsel's alleged errors.  The state court rejected his claim when he raised it in his postconviction motion: "[T]his Court finds that Defendant's cumulative error claim is without a basis as all of his claims were either meritless or procedurally barred.  See Johnson v. State, 769 So.2d 990, 1006 (Fla. 2000) (citing Melendez v. State, 718 So.2d 746, 749 (Fla. 1998))." (Dkt. 24, Ex. 6D, p. 815.)

"The Supreme Court has not directly addressed the applicability of the cumulative

error doctrine in the context of an ineffective assistance of counsel claim." *Forrest v. Fla. Dep't of Corr.*, 342 Fed. App'x 560, 564 (11th Cir. 2009). The Supreme Court has held, however, in relation to an ineffective assistance of counsel claim, that "there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." *Id.* at 564-65 (quoting *United States v. Cronic*, 466 U.S. 648, 659 n.26 (1984)).

Maynard has not shown that he is entitled to relief on any of the ineffective assistance claims presented in his federal habeas petition. He does not establish that the state court's rejection of his claim was contrary to or an unreasonable application of clearly established federal law. Ground Four warrants no relief.

Any of Petitioner's claims not specifically addressed herein have been determined to be without merit.

Accordingly, it is

**ORDERED** that Maynard's petition (Dkt. 1) is **DENIED**. The Clerk is directed to amend the docket to reflect that the Respondent is the Secretary, Department of Corrections. The Clerk is further directed to enter judgment against Maynard and to close this case.

It is further **ORDERED** that Maynard is not entitled to a certificate of appealability. A petitioner does not have absolute entitlement to appeal a district court's denial of his habeas petition. 28 U.S.C. § 2253(c)(1). A district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make

such a showing, Maynard "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennara v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)).  Maynard has not made this showing.  Finally, because Maynard is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Tampa, Florida, on August 15, 2016.

Charlene Edwards Honeywell
United States District Judge

Copy to:
John Lewis Maynard
Counsel of Record